Good morning. May it please the Court. My name is Stephen Christensen, Pro Se Appealant in Appeal 10-16-330. I will use the first four minutes of time with James Whitmire to follow with the balance of the six minutes. First off, let me say I'm nervous to address this Court. I do not do well speaking in public. Just talk to us. I invested $50,000 with Methwold under the account name of Kevin Brighton, electronic name KRYKEV, in March of 2007. Later in 2007, everything went way, way south. With excuse after excuse of our lack of payments and our principal return, there were a total of 70 people in that group. Our Kevin Brighton group was brought into this interpleader with three other parties, or three other groups, excuse me. The total number of people involved were 50 plus or minus. The total for a group could claim a total of $2.4 million, and these figures are before default. I would like to attempt to address the points that the district court used as reasons for determining lack of jurisdiction. Point one, lack of adverse claimants. As proof today that there are adverse claimants, you will hear from two of them, four groups, all having competing claims. I stand alone from the Brighton group. James Whitmire will stand with his group of nine. Point two, risk of multiple payments on a single liability. With four groups bundled into this interpleader, Methwold would have known that there would be risk of multiple claims against them. They cited in FAC 1 and 66 that they had multiple claims from different parties even before starting the interpleader. Point three, claims were in excess of stakeholder liability. The Whitmire group and myself are claiming $1.5 million plus. Add to that the two other groups, there could be a combined total of $2.4 million. Mr. Christensen, normally in these cases what we see is the person who has the money, called the stakeholder, puts the money into the court and then leaves and the competing claimants all try to prove that they're entitled to all or some portion of the money. This case is a little different in that the stakeholder, Methwold, left without putting the money in the court. So I think we have some difficulty regarding how we can help you at this point. What can we do as a court that would assist the parties who are trying to obtain their money to get it when there is no money in the court? You're absolutely right. There is no money. There was never any money filed with the court. All I would like to do is have an avenue for my $50,000 to be returned to me. Why don't you sue Methwold directly? I'm sorry? Why don't you sue Methwold directly? They're out of New Zealand. They're a New Zealand corporation. Well, you have nobody's brief, but since they filed suit in Nevada, they may have waived personal jurisdiction in Nevada. You may be able to sue them in Nevada now. That's a pretty tough road. But following on Judge Rawlinson's questions, there's only so much that the court can do. And even if we thought that the district court had made a mistake here, how do you force Methwold back to the table? I'm not so sure that them funds are not still here in the United States. Well, if they're here in the United States, then presumably you can sue them someplace in the United States, wherever they can be found. The problem is that we understand that they've now dismissed their attorneys. They don't wish to pursue the interpleader. That's very difficult for a court to force a plaintiff to come back to a lawsuit they don't want. I understand that defendants may like to see the lawsuit go forward, but the plaintiffs don't want to pursue it. How do we force a plaintiff to prosecute a suit? I don't have an answer to that. I do not. It's a tough situation. It is a tough situation. Thank you. Thank you. May it please the court, James Whitmire, on behalf of Chris Manfredonia and eight other parties, their deposits totaled approximately $1.4 million. Do you have an answer for our question? A couple of them, Your Honor. With respect to the question of why not just sue Methwald directly, in a theoretical world, I suppose it is conceivably possible. However, under Federal Rule of Civil Procedure 1, which stands for the proposition of a just, speedy, inexpensive resolution, we had this mechanism in place. Methwald wanted to participate. There was a stipulation in order to deposit the funds that was signed in the spring of 2009. For whatever reason, the order wasn't entered, whereby the money got deposited. This is a train that went horribly off track. And I suppose I appreciate the practical issue associated with how do you force another party to participate in a case. But when you have a New Zealand corporation, an England company, all I think we collectively wanted is a fair day in court. Right. But it's not even clear that you've got standing because it's not clear that the court can offer you any redress. How do we force Methwald back to the table? At least there's a chance. I'm not saying that it's perfect justice, but at least there's a chance. What's the chance that they'll voluntarily come back? There is a – Then why do you need this court if they'll voluntarily come back? Because – A ruling from this court as to whether the district court properly dismissed this case or not is utterly irrelevant to whether Methwald decides to come back to the table. And if we reverse the district court, that doesn't force Methwald back into the case. I understand that they may not ultimately, in reality, come back to the court. However, as a practical matter, I think that the legal question for the court is, did the district court improperly dismiss the interplater case? It might encourage a settlement or something like that. Your Honor, I can assure you that multiple attempts have been made through the Supreme Court settlement conference and otherwise. And Methwald did participate in that process. So I meant a judgment from this court might encourage some kind of settlement. That might be some – it's somewhat speculative, obviously, but it is some kind of possibility that what we might accomplish is getting them a settlement. I don't disagree with – I don't disagree with your Honor. I think that we can all collectively say that we're trying to deal with a very difficult situation where our depositors are out of money, where the stakeholder attempted to deposit the funds. For whatever reason, it didn't happen. We went through discovery. We filed our motion to disperse the interplater settlement proceeds. We took depositions from the Methwald representative in London, England. We tried to do everything that we possibly could, and there was a sua sponte, order to show cause, that focused on whether there was requisite adversity when the First Amendment complaint clearly outlined that. Well, counsel, going to the merits of the interplater question, this is a very, very strange interplater. It actually looks like it's an end run around the bankruptcy laws. It's just clear you've got an investment company that's gone bad. They don't have enough money to pay off all the claims. That's not really a classic interplater case. That's just money owed to creditors. This is a UCC matter. This isn't an interplater matter. That's the first time that that issue has ever popped up in this case. I think that's sort of the essence of the district court's concern about the lack of adversity. You're adverse to each other only because there isn't enough money to go around, and that just makes you creditors. That looks like what's going across the street in bankruptcy every day. And there was no bankruptcy petition. There was – whether there was an underlying potential bankruptcy issue or not, there was certainly a fund. There was insufficient funds to pay all the creditors. There were certainly competing creditors. And that, by definition, as I understood it, Stan, would fall within the concept of an interplater, whether it's Rule 22, whether it's under Section 1335, whether it's NRCP 67. You couldn't bring it under Rule 32. You're either 1335, which is a narrow interplater, or you're not here at all. Or Rule 22, which is an equitable interplater. There's no jurisdiction there. You have to have a separate ground for jurisdiction. You haven't got 1332 jurisdiction. With respect to 1332, there were multiple attempts to deposit the funds. But that doesn't get you there. That doesn't get you diversity of jurisdictions. With respect to the standing issue, you know, we tried to – we certainly could have had the basis to challenge jurisdiction. We should have had the ability to argue for why jurisdiction did exist. Did you consider a writ of mandamus to the Ninth Circuit to compel the court to accept the money? That issue – a lot of these issues are coming up for the first time. The writ of mandamus, no. And the honest answer is because during this Ninth Circuit conference settlement program, there was still a ray of hope that perhaps we could still get this case accomplished. And at every turn, there's been a roadblock. And with respect to some of these questions, Your Honor, I suppose that when the issues are sua sponte raised, as they were raised in ER, I believe it was 8, on the order to show cause, some of these issues that you're articulating, Your Honor, weren't even raised. We requested an opportunity to present oral argument. We didn't get oral argument. In effect, there was summary adjudication without oral argument. And we've, I suppose, done our best. I think that within the – Your real problem, counsel, comes when the district court issues the OSC and Meth Law declines to answer it. It declines to respond. It's effectively a dismissal for failure to prosecute. And if you're a defending party, you're defending in a suit in which the plaintiff decides not to sue you, usually that's a good thing. I understand. In the traditional context, there's no question about it. And is there a practical impediment by virtue of the fact that Meth Law did not respond? Of course. I am not going to stand before Your Honors with a straight face and say that that's a good thing, that Meth Law did not respond. However, in this context, in the interpleader context, we were certainly an interested party. We certainly had skin in the game. In essence, Meth Law, in this context, was very much akin to a nominal party. We were fighting tooth and nail to articulate why, Your Honor, after a year of proceeding down the path of discovery, filing our motions, doing everything that we were supposed to to say, why is this order to show cause coming out now? And if Meth Law got fed up with the process and said we're having to jump through too many hoops, then I suppose we as the interested parties are going to try to perform CPR on this case and keep it alive with some meaningful chance of trying to recover the funds. And is it a perfect remedy? No, it's not. Is it the only practical remedy our clients have? I can confidently say yes. Could we, in theory, try to sue somewhere? Perhaps, but the fund was right there for the taking. And when the parties, the parties, every party, including Meth Law, had stipulated almost a year before to allow the deposit and the order doesn't happen, I don't know. All I can, I suppose, argue in closing is that every attempt was made to cross the T's and dot the I's, whether it's on a jurisdictional analysis, whether it's on the merits analysis, whether it's trying to practically solve this dilemma through the district court, through the Ninth Circuit Court of Appeal settlement process, or even before, Your Honors, to try to say all we're asking for is the day in court to try to resurrect this on the discreet issue of did the district court properly dismiss the case. That particular conclusion I have is there was absolute error with respect to the premature dismissal of this case on an overly rigid and unduly technical jurisdictional analysis. All right. Thank you, counsel. Thank you, Your Honors. We understand your argument. The case just argued is submitted for decision by the court. The next case on calendar for argument is United States v. Scott.
judges: Arnold, Rawlinson, Bybee